UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARY RAY CLEM,

    Plaintiff,

v.                                                      Case No. 1:17-cv-744

                                                        Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,

_____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied his claim for disability insurance benefits (DIB).

Plaintiff alleged a disability onset date of March 15, 2010. PageID.245. Plaintiff identified his disabling conditions as: a back condition; hypertension; and Veterans Administration (VA) disability 100% for his back. PageID.238. Prior to applying for DIB, plaintiff completed one year of college and had past employment as a welder. PageID.239. An administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on April 27, 2016. PageID.95-104. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

**I.    LEGAL STANDARD**

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42

1

U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe

impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by his impairments and the fact that he is precluded from performing his past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ's DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of March 15, 2010, and met the insured status requirements of the Social Security Act through December 31, 2012. PageID.97.

At the second step, the ALJ found that through the date last insured (December 31, 2012), plaintiff had the severe impairment of lumbar degenerative disc disease with radiculopathy. PageID.97. At the third step, the ALJ found that through the date last insured, plaintiff did not

3

have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.97.

The ALJ decided at the fourth step:

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except he required a cane for ambulation. He could never operate foot controls or climb ladders, ropes, or scaffolds. The claimant could occasionally climb ramps and stairs and occasionally balance, stoop, kneel, crouch, and crawl. He had to avoid all unprotected heights, dangerous moving mechanical parts, and occupational vibration.

PageID.98. The ALJ also found that through the date last insured, plaintiff was unable to perform any past relevant work. PageID.102.

At the fifth step, the ALJ found that plaintiff could perform a significant number of unskilled jobs at the sedentary exertional level in the national economy. PageID.103-104. Specifically, the ALJ found that plaintiff could perform unskilled, sedentary work in the national economy such as inspector (57,000 jobs), final assembler (63,000 jobs), and surveillance-system monitor (51,000 jobs). PageID.103. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from March 15, 2010 (the alleged onset date) through December 31, 2012 (the date last insured). PageID.104.

### III. DISCUSSION

Plaintiff's brief raised two issues on appeal.

**A. The ALJ failed to properly evaluate Listing 1.04, which was harmful as substantial evidence shows plaintiff meets Listing 1.04A due to his lumbar spine impairments.**

A claimant bears the burden of demonstrating that he meets or equals a listed impairment at the third step of the sequential evaluation. *Evans v. Secretary of Health & Human Services*, 820 F.2d 161, 164 (6th Cir.1987). In order to be considered disabled under the Listing

of Impairments, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments." *Id*. An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. § 404.1525(d). A claimant does not satisfy a particular listing unless all of the requirements of the listing are present. *See Hale v. Secretary of Health & Human Services*, 816 F.2d 1078, 1083 (6th Cir.1987). *See, e.g., Thacker v. Social Security Administration*, 93 Fed. Appx. 725, 728 (6th Cir 2004) ("[w]hen a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency"). If a claimant successfully carries this burden, the Commissioner will find the claimant disabled without considering the claimant's age, education and work experience. 20 C.F.R. § 404.1520(d).

Here, plaintiff contends that he met the requirements of Listing 1.04A, which provides in pertinent part:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposos, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equine) or the spinal code. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss . . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1.

The ALJ evaluated plaintiff's condition under Listing 1.04 as follows:

> I have considered all listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 with specific attention to the following listing: 1.04 (Disorders of the spine).
>
> The claimant's condition does not meet or equal listing 1.04. The claimant's impairment does not reach the severity required by 1. 04 in that there is no evidence of compromise of a nerve root or spinal cord with the requisite evidence of nerve root compression and associated symptoms, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication.

PageID.98.

Plaintiff contends that he meets Listing 1.04A because the evidence shows degenerative disc disease resulting in the compromise of a nerve root, with neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss, and sensory loss. Plaintiff's Brief (ECF No. 11, PageID.638). In support of his claim, plaintiff states that he established evidence of compromise of a nerve root, pointing out that a 2011 MRI of his lumbar spine "showed a diffuse disc bulge indenting the cauda equine nerve roots, especially at L5 (compromise of nerve root)." PageID.636. While plaintiff's brief states that the MRI included the phrase "(compromise of nerve root)," this finding does not appear in the MRI report. In reviewing plaintiff's medical records, the ALJ evaluated the MRI noting that, "The November 2011 MRI of the claimant's lumbar spine showed mild multilevel degenerative changes (2F/5-6)." PageID.99. A later MRI from November 14, 2012, refers to "L4-L5: Diffuse disc bulging with a small central/right paracentral disc protrusion which abuts the anterior thecal sac as well as the origin of the right L5 nerve root without significant posterior displacement," with an impression of "Multilevel degenerative changes, as described above. In particular, there are small protrusions at L1-L2, L3-L3, and L4-L5." PageID.320. The ALJ also noted the MRI results from November 2012. PageID.99.

Defendant contends that plaintiff wrongly concluded that the MRIs include evidence of nerve root compression, because it is based upon his lay opinion, rather than a medical opinion. Defendant's contention is incorrect. In July 21, 2015, Richard Burke, M.D., noted that plaintiff's "EMG shows some axon loss in the L5 distribution *and his MRI shows some L5 nerve compression from 2012*." PageID.608. Since plaintiff was insured for DIB throughout all of 2012, Dr. Burke's treatment notes contradict the ALJ's determination that "there is no evidence of compromise of a nerve root" during the relevant time period. PageID.98. Based on this record, it appears that the ALJ's evaluation of the first element under Listing 1.04A is not supported by substantial evidence. Based on this evidence, and the cursory nature of the ALJ's evaluation of Listing 1.04, it is unclear to the Court as to how the ALJ reached the conclusion that plaintiff did not meet Listing 1.04A.

The Commissioner must provide a statement of evidence and reasons on which the decision is based. *See* 42 U.S.C. § 405(b)(1). While it is unnecessary for the ALJ to address every piece of medical evidence, *see Heston*, 245 F.3d at 534-35, an ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). "It is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." *Hurst v. Secretary of Health and Human Services*, 753 F.2d 517, 519 (6th Cir. 1985), quoting *Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir.1984). Here, the Court cannot trace the path of the ALJ's reasoning which led to the finding with respect to Listing 1.04A. Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate the

evidence to determine if plaintiff met the requirements of Listing 1.04A prior to the date last insured.

> **B. The ALJ's residual functional capacity (RFC) determination is not supported by substantial evidence because the ALJ failed to properly weigh the opinion of APRN Belonga or support the RFC by any opinion evidence from a medical source.**

1. **APRN Belonga**

Plaintiff contends that the ALJ's RFC determination is flawed because he failed to properly weigh the opinion of APRN ("advanced practice registered nurse") Kathy Belonga. RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. § 404.1545. It is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c).

As an initial matter, plaintiff stated that he did not start treating with ARPN Belonga until December 19, 2013, about one year after his date last insured. Plaintiff's Brief (ECF No. 11, PageID.630), PageID.432. Although this examination occurred long after the date last insured, the ALJ addressed ARNP Belonga's opinion as follows:

> In December 2013, Kathy Belonga, N.P., opined that the claimant's medical conditions prevented him from securing or following a substantially gainful occupation (3F/33). Specifically, she opined that he would need to be able to sit or stand at will. He could never lift, stoop, bend, or carry. The claimant fatigued easily and would therefore require frequent breaks. He would not be able to tolerate working a normal eight-hour shift. He could not drive or operate machinery until his radiculopathy was resolved (3F/33, 36, 70). Ms. Belonga is not an acceptable medical source and only examined the claimant once during a disability benefits evaluation. Her opinion is a reflection of the claimant's subjective allegations rather than his actual limitations. Her own notes indicate that the fact the claimant was able to produce a METs level of 10.4 during a period where he was symptomatic with the right L5 radiculopathy evidenced that he did not require a VA pension (3F/36). As is discussed in more detail above, other physical

> examination findings of record and the claimant's ongoing high level of activity shows that he is not as limited as Ms. Belonga opined (2F/10-11; 3F/35, 133). Furthermore, whereas Ms. Belonga opined the claimant would require surgery, multiple neurosurgical specialists of record disagreed (2F/11, 26, 29; 4F/47). Therefore, I accord this opinion little weight.

PageID.101.

The regulations provide that the agency will evaluate every medical opinion received "[r]egardless of its source," and that unless a treating source's opinion is given controlling weight, the agency will consider the factors set forth in § 404.1527(c)(1)-(6) in deciding the weight given to any medical opinion. *See* 20 C.F.R. § 404.1527(c). While the ALJ is required to give "good reasons" for the weight assigned a treating source's opinion, *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004), this articulation requirement does not apply when an ALJ rejects the report of a non-treating medical source. *See Smith v. Commissioner of Social Security*, 482 F.3d 873, 876 (6th Cir.2007). However, "the ALJ's decision still must say enough to allow the appellate court to trace the path of his reasoning." *Stacey v. Commissioner of Social Security*, 451 Fed. Appx. 517, 519 (6th Cir. 2011) (internal quotation marks omitted). The ALJ's decision has met that standard with respect to the opinions expressed by APRN Belonga. Accordingly, plaintiff's claim of error will be denied.

### 2. ALJ's RFC not supported by substantial evidence

Plaintiff contends that the ALJ failed to explain how she reached the determination that plaintiff could perform sedentary work. Plaintiff also contends that the ALJ did not perform a function-by-function analysis pursuant to Social Security Ruling (SSR) 96-8, which instructs that "the residual functional capacity assessment must first identify the individual's functional

limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations."[1]

Contrary to plaintiff's contention, the ALJ set forth her reasoning for concluding that plaintiff had the RFC to perform sedentary work:

> State medical consultant Eric VanderHaagen, D.O., opined in June 2014 that the claimant could engage in light exertional activity. The claimant could occasionally push or pull with his right lower extremity and required a cane for walking long distances and on uneven ground. He could frequently climb ramps and stairs and frequently balance. He could occasionally climb ladders, ropes, and scaffolds. The claimant could occasionally stoop, kneel, crouch, and crawl (1A/5-6). I accord this opinion partial weight because it is pa1tially consistent with the medical evidence. I have limited the claimant to sedentary work based on a combination of his back pain and leg symptoms. Because the claimant requires a cane as a precaution against falling, I have restricted him to jobs that allow him to use a cane whenever he ambulates.

PageID.101.

Finally, the ALJ complied with the applicable regulations by assessing each of plaintiff's work-related limitations that were at issue. *See Winslow v. Commissioner of Social Security*, 566 Fed. Appx. 418, 421 (6th Cir. 2014); *Delgado v. Commissioner of Social Security*, 30 Fed. Appx. 542, 547-48 (6th Cir. 2002). "Although a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing . . . the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Delgado*, 30 Fed. Appx. at 547-548 (citations and quotation marks

---

[1] In *Ferguson v. Commissioner of Social Security*, 628 F.3d 269, 272 n. 1 (6th Cir. 2010), the Sixth Circuit stated that it "assumed" that SSRs are binding on the Commissioner like a regulation:

"Social Security Rulings do not have the force and effect of law, but are 'binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner. 20 C.F.R. § 402.35(b)(1). In *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 549 (6th Cir. 2004), the court refrained from ruling on whether Social Security Rulings are binding on the Commissioner in the same way as Social Security Regulations, but *assumed* that they are. We make the same assumption in this case."

omitted). Here, the ALJ met the requirements for articulating the RFC determination as discussed in *Delgado* by reviewing plaintiff's medical history and functional limitations with respect to his physical impairments. PageID.97-102. The ALJ's determination of the RFC is supported by substantial evidence. Accordingly, plaintiff's claim of error will be denied.

### IV. CONCLUSION

For these reasons, the Commissioner's decision will be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner is directed to re-evaluate the evidence to determine if plaintiff met the requirements of Listing 1.04A prior to the date last insured. A judgment consistent with this opinion will be issued forthwith.

Dated: September 21, 2018 /s/ Ray Kent
United States Magistrate Judge